IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **JOE HAND PROMOTIONS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:20-cv-00640** |
| | ) | **Judge Aleta A. Trauger** |
| **RICKY L. SIMPSON, WILLIAM** | ) | |
| **BRENT SEABAUGH, individually, and** | ) | |
| **as officers, directors, shareholders,** | ) | |
| **members and/or principals of PHAT** | ) | |
| **BOYZ BAR & GRILL LLC d/b/a Phat** | ) | |
| **Boyz Bar & Grill, and PHAT BOYZ** | ) | |
| **BAR & GRILL LLC d/b/a Phat Boyz** | ) | |
| **Bar & Grill,** | ) | |
| | ) | |
| **Defendants,** | ) | |

## <u>MEMORANDUM</u>

Before the court are (1) defendant William Brent Seabaugh's Motion to Dismiss Count [One] of the Complaint (Doc. No. 14); and (2) plaintiff Joe Hand Promotions, Inc.'s Motion to Dismiss Defendant's Counterclaim (Doc. No. 27). For the reasons set forth herein, both motions will be granted.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

As relevant here, plaintiff Joe Hand Promotions, Inc. ("JHP") initiated this lawsuit on July 22, 2020 by filing a Complaint (Doc. No. 1) naming as defendants Seabaugh and Ricky Simpson, both individually and in their capacity as "officers, directors, shareholders, members and/or principals" of Phat Boyz Bar & Grill LLC, and Phat Boyz Bar & Grill LLC ("PBBG"). JHP is a company that "specializes in distributing and licensing premier sporting events to commercial/non-residential establishments," including bars and restaurants. (Doc. No. 1 ¶ 4.) JHP alleges that, by

written agreement with the promoters of the event, it was "granted the exclusive right to commercially distribute the audiovisual presentation of the *Floyd Mayweather, Jr. vs. Conor McGregor* boxing match" ("the Program"), on August 27, 2017. (*Id.* ¶ 5.) JHP was assigned ownership of the right to distribute and authorize the public performance of the Program, in accordance with the Copyright Act, 17 U.S.C. § 106(3) and (4). JHP licensed the Program to over 6,000 business establishments nationwide, authorizing them to exhibit the Program to their patrons, guests, and customers in exchange for the payment of a commercial license fee.

JHP alleges that PBBG operates a business known as Phat Boyz Bar & Grill (the "Establishment") in Murfreesboro, Tennessee and that Simpson and Seabaugh are, or were on August 27, 2017, "officers, directors, shareholders, members and/or principals" of PBBG. (Doc. No. 1 ¶¶ 7–8.) The plaintiff asserts that the defendants bypassed the available licensing procedure and took steps to obtain and broadcast the Program at the Establishment on August 27, 2017, "through unauthorized cable signal, satellite signal, and/or internet stream." (*Id.* ¶ 11.) JHP alleges that the defendants "intentionally pirated" the Program for the purpose of attracting paying customers, without license or authorization from the plaintiff. (*Id.* ¶ 15.)

The Complaint states two "counts" or causes of action. Count One asserts that the defendants' alleged acts were in violation 47 U.S.C. §§ 553 (unauthorized reception of cable service) and 605 (unauthorized publication or use of communications) of the Federal Communications Act ("FCA"), as amended by the Cable Communications Policy Act of 1984, insofar as the defendants' "exhibition of the Program was accomplished through the [unauthorized] interception and receipt of a cable and/or interstate satellite signal." (Doc. No. 1 ¶ 19.) Count Two asserts that the defendants' alleged acts violated the plaintiff's rights under the

Copyright Act, 17 U.S.C. §§ 106 (exclusive rights in copyrighted works) and 501 (copyright infringement).

On September 24, 2020, defendant Seabaugh, through counsel, filed an Answer and Counterclaim, in which he denies that he was an officer, director, shareholder, member, and/or principal of PBBG, denies liability, asserts various affirmative defenses, and seeks a declaratory judgment that Seabaugh himself did not commit "signal piracy"—that is, did not violate the FCA— and did not violate the plaintiff's rights in any copyright. (Doc. No. 13, at 15.) He also seeks attorney's fees and costs. On the same day, Seabaugh filed his Motion to Dismiss and supporting Memorandum, asserting that the FCA claim, Count One of the Complaint, is barred by the applicable statute of limitations. (Doc. Nos. 14, 15.) The plaintiff filed a Response in Opposition to the Motion to Dismiss (Doc. No. 23), and Seabaugh filed a Reply (Doc. No. 24).

Thereafter, in its role as counter-defendant, JHP filed a Motion to Dismiss Defendant's Counterclaim (Doc. No. 27), to which Seabaugh filed a Response (Doc. No. 28), and JHP filed a Reply (Doc. No. 29).

## II.   STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) requires the court to construe the allegations in the complaint in the light most favorable to the plaintiff and accept all of the complaint's well pleaded factual allegations as true. *La. Sch. Emps.' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 477 (6th Cir. 2010). However, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

A Rule 12(b)(6) motion must also be reviewed in light of the pleading standards set forth in Federal Rule of Civil Procedure 8. *Twombly*, 550 U.S. at 555. Under Rule 8, a complaint must

contain, in relevant part, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Rule 8 further provides that the party responding to the complaint "must affirmatively state any avoidance or affirmative defense, including . . . statute of limitations." Fed. R. Civ. P. 8(c). Based on the plain language of Rule 8, the defendant, rather than the plaintiff, bears the burden of pleading the affirmative defense of the statute of limitations. *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). For that reason, a motion to dismiss based on Rule 12(b)(6) "is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations." *Id.* At the same time, it is also well established that, if the factual allegations in the complaint "affirmatively show that the claim is time-barred," dismissal under Rule 12(b)(6) is appropriate. *Id.*

## III. JHP'S MOTION TO DISMISS

For purposes of the defendant's Motion to Dismiss, there is no dispute that the allegedly unlawful act of piracy occurred on August 27, 2017 and that the Complaint was filed a little less than three years later, in July 2020. The only question presented by JHP's Motion to Dismiss is what statute of limitations governs claims under the FCA. The defendant posits that the two-year statute of limitations in Tennessee's "Signal Piracy Law," Tenn. Code Ann. § 39-14-149, applies, making the FCA claims untimely.[1] The plaintiff argues that the court should apply the three-year limitations period in Tenn. Code Ann. § 28-3-105, applicable to Tennessee conversion, or, alternatively, the three-year limitations period provided by the Copyright Act, 17 U.S.C. § 507(b),

---

[1] This provision provides a two-year limitations period running from the date of "the aggrieved communication service provider's actual knowledge of the violation." Tenn. Code Ann. § 39-14-149(e)(1)(B). The plaintiff here, however, does not argue that the discovery date makes a difference in this case; it argues only that a three-year limitation period applies.

making the FCA claims timely. The court finds that the two-year period provided by § 39-14-149 applies and that the FCA claims are time-barred.

The FCA does not contain its own statute of limitations. When a federal statute does not have its own statute of limitations, the federal courts generally must "borrow" a period from the forum state's analogous state law "as a matter of interstitial fashioning of remedial details under the respective substantive federal statute[]." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 160 n.13 (1983); *see also Wilson v. Garcia*, 471 U.S. 261, 266 (1985) (noting that, "when Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation"); *McCormick v. Miami Univ.*, 693 F.3d 654, 662 (6th Cir. 2012).[2] State-law borrowing is a "longstanding" and "settled" practice when federal statutes do not provide for their own limitations periods. *N. Star Steel Co. v. Thomas*, 515 U.S. 29, 34 (1995) (quotation marks and citations omitted).

While borrowing from the forum state's law is the preferred course and the general rule, the Supreme Court has recognized that state limitations periods do not always provide the best "vehicles for the enforcement of federal law." *DelCostello*, 462 U.S. at 161. Thus, a court may apply the limitations period from an analogous federal law instead, if borrowing a state statute of limitations would "frustrate or interfere with the implementation" of federal law. *N. Star*, 515 U.S. at 34 (citation omitted). Borrowing from federal law, however, is a "closely circumscribed . . .

---

[2] As the Sixth Circuit recognized in *McCormick*, if the federal cause of action arises under a federal statute enacted after December 1, 1990, it is governed by 28 U.S.C. § 1658, which prescribes a four-year statute of limitations period. *McCormick*, 693 F.3d at 662 (citing *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004)). The portions of the FCA at issue here were enacted prior to 1990. Specifically, 47 U.S.C. § 553 was enacted in Section 634 of the Cable Communications Policy Act of 1984, Pub. L. No. 98–549, 98 Stat. 2779 (codified as amended in scattered sections of 47 U.S.C.), and Section 605 was originally enacted in Section 705 of the Communications Act of 1934, which was amended in 1984 to create civil causes of action. *See Kingvision Pay Per View, Ltd. v. Wilson*, 83 F. Supp. 2d 914, 916 n.3 (W.D. Tenn. 2000).

[and] narrow exception to the general rule." *Id.* Courts must adopt a limitations period from analogous state law unless federal law "clearly provides a closer analogy than available state statutes, and . . . the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking." *Lampf v. Gilbertson*, 501 U.S. 350, 356 (1991) (quotation marks and citation omitted).

In other words, as the Third Circuit has stated:

> [I]f there is a parallel state statute, there is no reason to explore federal law, unless the state limitations period impedes the implementation of national policies, is at odds with the purpose or operation of federal substantive law, or is demanded by the practicalities of litigation.

*Kingvision Pay-Per-View, Corp. v. 898 Belmont, Inc.*, 366 F.3d 217, 221 (3d Cir. 2004). "[A]bsent any [such] impediment . . . , courts are not required to examine federal limitations periods." *Id.*

The Sixth Circuit has not identified which Tennessee law is most analogous to 47 U.S.C. §§ 553 and 605, and only a few district courts have considered the issue. Most notably, the United States District Court for the Western District of Tennessee found that the three-year statute of limitations applicable to actions for conversion in Tennessee was most appropriate. *Kingvision Pay Per View, Ltd. v. Wilson*, 83 F. Supp. 2d 914, 919 (W.D. Tenn. 2000). That decision was issued before the enactment of Tenn. Code Ann. § 39-14-149. Nonetheless, in *DISH Network L.L.C. v. Simmons*, No. 4:17-cv-53, 2018 WL 3647169 (E.D. Tenn. June 28, 2018), a magistrate judge in the Eastern District of Tennessee recommended granting the plaintiff's motion for a default judgment, adopting without discussion *Kingvision*'s determination that FCA claims were subject to the three-year statute of limitations applicable to Tennessee conversion, "based on application of state law." *Id.* at *3. The district court accepted the recommendation, to which no objections were filed. *Network L.L.C. v. Simmons*, No. 4:17-cv-53, No. 4:17-CV-53, 2018 WL 3623764 (E.D. Tenn. July 30, 2018).

Even more recently, however, another decision from the Eastern District of Tennessee determined that FCA claims in another case filed by JHP, related to the allegedly unlawful pirating of the same Program at issue here, were time-barred, borrowing the two-year statute of limitations from Tennessee's Signal Piracy Law, Tenn. Code Ann. § 39-14-149. *Joe Hand Promotions, Inc. v. Griffith*, No. 3:20-cv-382, 2020 WL 7496529, at *4 (E.D. Tenn. Dec. 21, 2020).

In *Griffith*, JHP raised all the same arguments it makes here: (1) that Tenn. Code Ann. § 39-14-149 is not analogous to the FCA because the Tennessee statute is a criminal statute and is broader than the FCA; (2) that the court should follow the guidance of the opinions in *Kingvision* and *Network L.L.C.* and apply the limitations period applicable to conversion; and, alternatively, (3) that a "majority of courts nationwide" have applied the Copyright Act's three-year statute of limitations to FCA claims, in the interest of uniformity. (Doc. No. 23, at 5–6 (collecting cases).) Judge McDonough, for the Eastern District of Tennessee, rejected all of these arguments.

First, regarding the earlier Tennessee decisions, the court in *Griffith* noted that *Kingvision* was decided prior to the enactment of Tenn. Code Ann. § 39-14-149 and that the issue was not meaningfully presented to the court in *Network L.L.C.*

Second, the court found § 39-14-149 to be closely analogous to the FCA:

> Section 39-14-149, like 47 U.S.C. §§ 553 and 605, provides for both civil and criminal penalties for the proscribed actions. While § 39-14-149 penalizes more actions within a single statute than §§ 553 and 605, it is targeted at preventing the same conduct as the conduct covered by those statutes. Specifically, both § 553 and § 39-14-149(a)(1) are aimed at preventing the interception of cable communications when such interception has not been approved by the provider of such communications. Section 39-14-149(a)(1) also forbids the retransmission of the intercepted communications, just as § 605 bans divulging or publishing intercepted communications. Conversion, on the other hand, can apply to any personal property taken in any manner.

*Griffith*, 2020 WL 7496529, at *4 (citing *Barger v. Webb*, 391 S.W.2d 664, 665 (Tenn. 1965) (defining conversion)).

Finally, rejecting the plaintiff's alternative argument that the Copyright Act's statute of limitations should apply, the court observed that none of the cases cited by JHP considered whether the Copyright Act was more analogous to the FCA than available *Tennessee* statutes. And, "[i]ndeed, the only court to meaningfully do so, the Western District of Tennessee in *Kingvision*," found the Tennessee conversion statute to be more closely analogous than the Copyright Act. *Id.* at *3 n.3.

This court agrees entirely with Judge McDonough's analysis, which applies equally here. In addition, the court notes that, of the three circuit courts of appeal to consider the question of what statute of limitations should apply to FCA claims, only one, the Fifth Circuit, adopted the Copyright Act as more closely analogous to the FCA than the forum state's statute. *Prostar v. Massachi*, 239 F.3d 669, 678 (5th Cir. 2001). At least at the time, Louisiana did not have a cable piracy statute. Regardless, the Fifth Circuit's decision was largely premised upon its conclusion that "application of Louisiana conversion law to cable piracy claims brought under 47 U.S.C. §§ 553 and 605 would undermine the implementation of the FCA," because "the need for national uniformity in enforcing the FCA requires the application of a single standard." *Id.* at 676. Otherwise, it believed, "[t]he application of state conversion law in each of the fifty states would result in widely varying limitations periods. . . . [C]able companies engage in multistate activities and would consequently be required to make fifty separate decisions in their efforts to investigate and pursue cable piracy. A single federal standard would eliminate these practical difficulties, facilitating resolution of the national problems addressed by the FCA." *Id.* at 676–77 (" (internal quotation marks and citations to the record omitted)).

Since then, both the Third and Ninth Circuits have rejected the Fifth Circuit's definition of uniformity and its conclusion that the need for such uniformity weighed in favor of borrowing a

federal statute's limitation period for FCA claims. The Third Circuit expressly noted that "there is a difference between uniformity in construing the substantive elements of a statute in order to characterize a claim for statute of limitations purposes and the next step of determining what limitations periods to adopt for a particular type of claim." *Kingvision Pay-Per-View, Corp. v. 898 Belmont, Inc.*, 366 F.3d 217, 222 (3d Cir. 2004). Thus, for example, in *Wilson v. Garcia*,

> the Supreme Court held that § 1983 claims should be characterized uniformly as state tort actions. The Court then determined, however, that the length of the limitations period is to be governed by state tort law. The Court stressed that uniformity was an issue only in the characterization of the claim, stating "the statute [§ 1983] is fairly construed [as a tort claim] as a directive to select, in each State, the one most appropriate statute of limitations for all § 1983 claims. The federal interests in uniformity, certainty, and the minimization of unnecessary litigation all support the conclusion that Congress favored this simple approach." Thus, while the Court embraced uniformity in recognizing § 1983 claims as tort claims for statute of limitations purposes, it did not find that the limitations periods themselves needed to be uniform.

*898 Belmont*, 366 F.3d at 222 (quoting *Wilson*, 471 U.S. at 275).

The Third Circuit declined to apply the Copyright Act's limitation period to FCA claims, noting that those federal district courts that had done so only applied "the federal limitations period under the Copyright Act to FCA claims when the only state law from which to borrow a limitations period was a general conversion law." *Id.* at 223. It held that these cases did not "predict the proper outcome of the case at bar involving a state statute narrowly crafted to deter cable piracy" and, further, that a district court selecting "an analogous state limitations period" was not required to "determine that every state has such an analogous statutory scheme—but only that the state whose law is being applied has such a one." *Id.* It therefore affirmed the district court's application of the two-year statute of limitations supplied by Pennsylvania's cable piracy statute. *Id.* at 225.

Similarly, in *DirecTV, Inc. v. Webb*, 545 F.3d 837 (9th Cir. 2008), the Ninth Circuit borrowed the one-year statute of limitations found in California's cable piracy statute. Rejecting

the plaintiff's argument that the court should adopt a uniform federal limitations period so as not

to "stymie the policies underlying" the FCA, *id.* at 850 (citation omitted), the court stated:

> [The plaintiff] is correct that uniformity and geographic character are relevant
> concerns. Yet it misconstrues the meaning and the significance of these terms.
> "Uniformity," for example, does not speak to a litigant's preference for a single
> limitations period in multiple lawsuits across multiple jurisdictions. Rather, it is a
> threshold question concerning how best to characterize a single federal cause of
> action for borrowing purposes. The need for uniformity arises when the complexity
> of a federal action is such that a single state limitations period may not be
> consistently applied within a [single] jurisdiction. The need for uniformity does not
> dictate whether state or federal borrowing is appropriate, and it does not counsel
> against application of the Piracy Act's one-year statute of limitations.
>
> [The plaintiff] also misconstrues the nature and relevance of "geographic
> character." This term refers to whether the multistate nature of a single claim
> subjects that claim to the limitations periods of multiple states, creating confusion
> and encouraging forum shopping. Accordingly, it is irrelevant that [the plaintiff]
> broadcasts nationally or has, as it claims to have done, filed thousands of lawsuits
> in district courts across the nation. [The plaintiff's] piracy claims against the
> defendant in this case . . . do not stem from predicate acts spanning multiple
> jurisdictions but from a localized violation in a single jurisdiction. . . . In any event,
> geographic considerations do not counsel for the adoption of a federal limitations
> period less analogous than a state counterpart.

*Id.* at 850–51 (internal citations omitted).

This court is persuaded that the Sixth Circuit, when presented with the question, will

likewise conclude that Tenn. Code Ann. § 39-14-149 is the state statute most closely analogous to

the FCA, that the adoption of the two-year statute of limitations provided for actions under that

statute, in § 39-14-149(e)(1)(B), would not "frustrate or interfere with the implementation" of

federal law, *N. Star*, 515 U.S. at 34, and that there is no need to look to federal law for a different

limitations period. Because it plainly appears from the face of the Complaint that the event giving

rise to the FCA claims occurred more than two years before this lawsuit was filed, and the plaintiff

does not contend that it discovered the violation within the limitations period, the defendant's

Motion to Dismiss, targeted at Count One of the Complaint only, will be granted.

## IV. THE PLAINTIFF'S MOTION TO DISMISS

Seabaugh brings a Counterclaim under the Declaratory Judgment Act, 28 U.S.C.A. § 2201, seeking judicial declarations that (1) Seabaugh did not violate the FCA; (2) Seabaugh is not liable for infringing any rights JHP may have under the Copyright Act; and (3) Seabaugh is entitled to attorney's fees and costs as a prevailing party under the Copyright Act. (Doc. No. 13, at 15.) JHP now seeks dismissal of the Counterclaim in its entirety, arguing that the Counterclaim, as a "mirror image" of the Complaint, is "duplicative and redundant" and that the relief sought in the Counterclaim will "necessarily [be] resolved as part of the claims in the lawsuit." (Doc. No. 27, at 2, 5.) It posits that, to the extent Seabaugh brings the Counterclaim in order to preserve his right to seek attorney's fees under the Copyright Act, he would still be entitled to seek fees as the prevailing party if the plaintiff's copyright claim is unsuccessful.

Seabaugh acknowledges that whether to dismiss a counterclaim for a declaratory judgment is within the court's discretion, but, he argues, the court should exercise its discretion to allow his Counterclaim to proceed, because, in addition to maintaining his ability to claim attorney's fees, the Counterclaim would "allow Seabaugh to clear his name from claims of commission of a criminal act and establish that use of the internet does not constitute cable or satellite piracy." (Doc. No. 28, at 2.)

Under the Declaratory Judgment Act, a federal court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C.A. § 2201. The Act, however, is purely "procedural," insofar as it leaves "substantive rights unchanged" and, importantly, does not shift the burden of proving the elements of a substantive claim to the party seeking the declaration. *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 198–99 (2014) (holding that, where a patent licensee threatened with a lawsuit for patent infringement files

a declaratory judgment action, the burden of proving infringement remains on the patentee, rather than shifting to the licensee to prove non-infringement).

In addition, the Supreme Court has recognized that the Declaratory Judgment Act "created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). "Consistent with the nonobligatory nature of the remedy," a district court may dismiss a claim for declaratory judgment at its discretion, if the court determines "that a declaratory judgment will serve no useful purpose." *Id.* Based on this principal, courts regularly dismiss redundant counterclaims "when it is clear that there is complete identity of factual and legal issues between the complaint and the counterclaim," and adjudication of the complaint would render counterclaims moot. *Emma, Inc. v. Microstrategy, Inc.*, No. 3-11-0926, 2012 WL 90405, at *1 (M.D. Tenn. Jan. 11, 2012).

In this case, the court has already determined that JHP's FCA claims must be dismissed as barred by the statute of limitations. Seabaugh's demand for a declaration that he is not liable under the FCA, therefore, has already been rendered moot, and he also has no legitimate interest in "clearing his name" as to that claim or in establishing that "use of the internet" does not violate the FCA.

The only remaining substantive claim still pending is for copyright violation. Courts have regularly held that counterclaims for copyright non-infringement are redundant of substantive claims in a complaint alleging copyright infringement and may be dismissed as serving no useful purpose. *See, e.g.*, *Malibu Media, LLC v. [Redacted]*, 705 F. App'x 402, 403 (6th Cir. 2017) (affirming the district court's dismissal of the defendant's counterclaim for a declaration that he was not a copyright infringer as a "mirror image" of the plaintiff's copyright infringement claim and therefore redundant); *Joe Hand Promotions, Inc. v. Griffith*, No. 3:20-cv-382, 2021 WL

102229, at *2 (E.D. Tenn. Jan. 12, 2021) (citing *Malibu Media* and dismissing as redundant counterclaims for declaratory judgment of non-infringement of copyright); *Pearson Educ., Inc. v. C&N Logistics, Inc.*, No. 3:18-CV-00438, 2018 WL 6528128, at *5 (M.D. Tenn. Dec. 12, 2018) (Richardson, J.) (same).

This court likewise finds that the Counterclaim in this case is a mirror image of the Complaint and, as such, redundant. Because the Counterclaim will serve no useful purpose, the court will dismiss it in its entirety.

## V.    CONCLUSION

For the reasons set forth herein, the court will grant both Motions to Dismiss. An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge